**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1657-24

CITY OF UNION CITY, by
and through ALEJANDRO
VELAZQUEZ, as Public
Officer,

      Plaintiff-Respondent,

v.

CHRISTOPHER WILLIAMS,

      Defendant-Appellant,

and

SUEZ WATER NEW JERSEY,
INC., PUBLIC SERVICE
ELECTRIC AND GAS COMPANY,
and WELLS FARGO BANK, N.A.,

      Defendants.

_____

Submitted April 14, 2026 – Decided April 27, 2026

Before Judges Firko and Vinci.

On appeal from the Superior Court of New Jersey, Chancery Division, Hudson County, Docket No. C-000013-19.

Christopher Williams, self-represented appellant.

Chasan Lamparello Mallon & Cappuzzo, PC, attorneys for respondent (Cindy Nan Vogelman, of counsel and on the brief; Brianna C. Martins, on the brief).

PER CURIAM

This matter comes before us for a second time. Defendant Christopher Williams appeals once again from an order denying reconsideration of a March 1, 2019 order appointing a receiver for his building (the subject property) if he did not abate certain code violations. He previously appealed from an order denying reconsideration of that order. On June 2, 2023, we rejected Williams's interlocutory motion seeking relief from three prior orders affirming appointment of the receiver. City of Union City v. Williams, No. A-3742-19 (App. Div. June 2, 2023) (slip op. at 18).

After Williams filed additional motions to dismiss, on June 7, 2024, the motion court granted plaintiff City of Union City's (the City) second motion to enforce litigant's rights and denied Williams's motions. Thereafter, Williams filed motions for relief from and for reconsideration of the June 7, 2024 order, and the City filed its third motion to enforce litigant's rights. On December 20,

2024, the motion court granted the City's motion, denied Williams's motions, and found him in violation of the March 1, 2019 and June 7, 2024 orders.

Before us, Williams appeals from the June 7, 2024 order denying his motion to dismiss the City's complaint and the December 20, 2024 order denying his motion for reconsideration of the June 7, 2024 order and, for a second time, the March 1, 2019 order. We affirm all of the orders under review.

## I.

### Procedural Background

The pertinent facts and procedural history are set forth in our prior opinion and need not be repeated here. Williams, slip op. at 2-10. In our opinion, we "considered [Williams's] challenges to all orders entered by the chancery court on or before February 28, 2020," and held "[Williams] will not be permitted to challenge any of those orders in a future appeal." Id. at 18.

Ten days later, on June 12, 2023, Williams filed a motion for reconsideration with this court, which we denied on July 5, 2023. On July 11, 2024, our Supreme Court denied Williams's petition for certification. City of Union City v. Williams, 256 N.J. 443 (2024).

### Federal Court Action

On May 1, 2022, Williams filed a complaint in the United States District Court for the District of New Jersey against the receiver assigned to the subject

property, the City, and its attorneys.[1] <u>Williams v. Stack</u>, No. 22-cv-2439, at \*1-2 (D.N.J. Sept. 5, 2023).  He argued plaintiffs violated his Fifth Amendment right against unlawful takings, procedural due process, and his Fourteenth Amendment right to equal protection under the law.  <u>Ibid.</u>  Plaintiffs filed a motion to dismiss the complaint with prejudice under Fed. R. Civ. P. 12(b)(6).  <u>Id.</u> at \*5.  The federal court granted the motion and dismissed Williams's complaint with prejudice as to the City as time-barred under the applicable statute of limitations and found it was not subject to equitable tolling.  <u>Id.</u> at \*6-9.  The federal court also found the receiver was entitled to quasi-judicial immunity.  <u>Id.</u> at \*9-10.  On July 26, 2024, the United States Court of Appeals for the Third Circuit affirmed the decision.  <u>Williams v. Stack</u>, No. 23-2685, at \*5 (3d Cir. July 26, 2024).

Continuance of State Court Litigation

On April 8, 2024, Williams filed a cross-motion to dismiss multiple orders relating to the appointment of a receivership to the subject property with prejudice.  He also opposed the City's second motion in aid of litigant's rights, which was denied without prejudice pending our June 2, 2023 decision.  Williams reiterated the same arguments as before:  that the unit at the subject

---

[1] For the sake of consistency, we refer to these parties in the federal litigation as "plaintiffs" in our opinion.

property was grandfathered under the New Jersey Uniform Construction Code Act (the Act), N.J.S.A. 52:27D-119 to -141, and applicable regulations under the Uniform Construction Code (the Code), N.J.A.C. 5:23-1.1 to -12A.6, because the subject property was built before the Act's enactment, pursuant to N.J.A.C. 5:23-2.3, and he was occupying one of the units as his principal residence. On April 19, 2024, Williams filed a second cross-motion to dismiss the City's complaint.

<u>The City's Second Motion To Enforce Litigant's Rights</u>

On June 7, 2024, the motion court granted the City's second motion to enforce litigant's rights and denied Williams's motions to dismiss the City's complaint requesting appointment of a receiver. The order authorized the receiver to retrieve renovation permits, engage a contractor, obtain final inspections, find tenants, collect rent from tenants, and make an application to the zoning board to legalize the first-floor unit. The order also restrained Williams from interfering with the receiver's authorized actions. On October 25, 2024, the receiver conducted another inspection of the subject property. On November 13, 2024, Williams filed a motion for relief from the June 7, 2024

order pursuant to <u>Rule</u> 4:50-1(a) and (f),[2] <u>Rule</u> 1:1-2(a),[3] and based on the alleged failure of service of process by the City in violation of <u>Rule</u> 1:5-1(a).[4] He contended the June 7, 2024 order conflicted with our decision. On November

---

[2] <u>Rule</u> 4:50-1(a) and (f) provide in pertinent part:

> On motion, with briefs, and upon such terms as are just, the court may relieve a party or the party's legal representative from a final judgment or order for the following reasons: (a) mistake, inadvertence, surprise, or excusable neglect; . . . (f) any other reason justifying relief from the operation of the judgment or order.

[3] <u>Rule</u> 1:1-2(a) provides:

> The rules . . . shall be construed to secure a just determination, simplicity in procedure, fairness in administration and the elimination of unjustifiable expense and delay . . . any rule may be relaxed or dispensed with by the court in which the action is pending if adherence to it would result in an injustice. In the absence of rule, the court may proceed in any manner compatible with these purposes . . . .

[4] <u>Rule</u> 1:5-1(a) provides in pertinent part:

> In all civil actions, . . . orders, judgments, pleadings subsequent to the original complaint, written motions . . . , briefs, appendices, petitions and other papers . . . shall be served . . . upon parties appearing [self-represented]; . . . . The party obtaining an order or judgment shall serve it on all parties who have not been electronically served . . . nor served personally in court, as herein prescribed within [seven] days after the date it was signed . . . .

6

26, 2024, the City filed its third cross-motion to enforce litigant's rights, claiming Williams refused to grant the receiver access to the subject property.

<u>The December 20, 2024 Order</u>

On December 20, 2024, the motion court addressed (1) the City's third motion to enforce litigant's rights; and (2) Williams's motion for relief from the June 7, 2024 order. The motion court granted the City's motion and denied Williams's motion. The motion court found Williams was in violation of the March 1, 2019 and the June 7, 2024 orders for:

> a. Refusing to provide access to the [second] [f]loor [a]partment to the [r]eceiver, his contractor, and inspectors from the Union City [b]uilding [d]epartment;
>
> b. Interfering in the [r]eceiver's efforts to collect rent directly from the tenants at the property;
>
> c. Collecting rent from the tenants at the property;
>
>     . . . .
>
> e. Failing to turn over rents received from the tenants for the operation of the property;
>
> f. Failing to turn over the keys, combinations[,] and locks necessary for the [r]eceiver to obtain full access to the property to the [r]eceiver; and
>
> g. Interfering with the [r]eceiver discharging its duties pursuant to the [c]ourt's [o]rders, and the Multifamily Housing Preservation and Receivership Act [MHPRA], N.J.S.A. 2A:42-114, to -142 . . . .

7

The motion court ordered Williams to permit the receiver access to the subject property, turn over rents, provide an accounting, provide tenant contact information, and restricted Williams's ability to collect rents or interfere with the receiver's efforts.  The motion court stated:

> If . . . Williams fails to comply with this [o]rder, the [c]ourt will consider an order to show cause [OTSC] filed in compliance with R[ule] 1:10-2, to hold . . . Williams in civil contempt of court, and to issue a warrant for his arrest to bring him into court to compel his compliance with this [o]rder.

In its oral opinion, the motion court cautioned Williams:

> If [the receiver does not] have the keys, you have to turn them over.  It's that simple.
>
>      . . . .
>
> If you're getting rent, you have to turn it over.
>
> If you have keys that they don't have, you have to give it to him.  The rent receiver has to do his job.  And [the court is] not getting rid of him [and] not evicting anyone.
>
>      . . . .
>
> But, you have to comply.  The order lays it out what to do.  If . . . you're giving him the rent, then you've done it . . . if he's got the keys, then you don't.  But, . . . if your roommate says they're not going to let you in or you're not going to let people into your apartment, you're not in compliance.
>
>      . . . .

8

> [The City] . . . is involved in this matter, sir, whether you like them or not. And [the court does not] have the wherewithal to do plumbing inspections and remove gas lines and evict tenants who are problematic. That is why there is a receiver. . . . [Y]ou have to work with him. If you're working with him then there's no problem.

A memorializing order was entered. This appeal followed.

Before us, Williams primarily argues he was denied equal protection under the law under the Fourteenth Amendment of the United States Constitution, this State's Constitution, and "regulations." We disagree.

## II.

Relief from a judgment or order under Rule 4:50-1, is "granted sparingly," and in exceptional circumstances. F.B. v. A.L.G., 176 N.J. 201, 207 (2003). "The decision whether to vacate a judgment on one of the six specified grounds is a determination left to the sound discretion of the trial court, guided by principles of equity." Ibid. On appeal, "[t]he decision granting or denying an application to open a judgment will be left undisturbed unless it represents a clear abuse of discretion." Hous. Auth. of Morristown v. Little, 135 N.J. 274, 283 (1994). See U.S. Bank Nat'l Ass'n v. Guillaume, 209 N.J. 449, 467 (2012) (a trial court's determination under Rule 4:50-1, "warrants substantial deference, and should not be reversed unless it results in a clear abuse of discretion").

A trial court's order granting a motion to enforce litigant's rights is likewise reviewed under an abuse of discretion standard.  N. Jersey Media Grp., Inc., v. State, Off. of Governor, 451 N.J. Super. 282, 299-300 (App. Div. 2017); Wear v. Selective Ins. Co., 455 N.J. Super. 440, 458 (App. Div. 2018).  "The [c]ourt finds an abuse of discretion when a decision is 'made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis.'"  Guillaume, 209 N.J. at 467-68 (quoting Iliadis v. Wal-Mart Stores, Inc., 191 N.J. 88, 123 (2007)).

A court may grant a motion for relief from judgment for "any . . . reason justifying relief from the operation of the judgment or order."  R. 4:50-1(f).  This catchall provision permits relief "as expansive as the need to achieve equity and justice."  LVNV Funding, LLC v. Deangelo, 464 N.J. Super. 103, 109 (App Div. 2020) (quoting Court Inv. Co. v. Perillo, 48 N.J. 334, 341 (1977)).

In deciding a motion brought under this provision, a court should seek "to reconcile the strong interests in finality of judgments and judicial efficiency with the equitable notion that courts should have authority to avoid an unjust result in any given case."  Ibid. (quoting Manning Eng'g, Inc. v. Hudson Cnty. Park Comm'n, 74 N.J. 113, 120 (1977)).  Relief is available only when "truly exceptional circumstances are present" leading to "a grave injustice."

Guillaume, 209 N.J. at 484 (quoting Hous. Auth. of Morristown, 135 N.J. at 289).

We also review an order denying reconsideration under Rule 4:49-2 for abuse of discretion. Parke Bank v. Voorhees Diner Corp., 480 N.J. Super. 254, 262 (App. Div. 2024); see also Cummings v. Bahr, 295 N.J. Super. 374, 389 (App. Div. 1996). "An abuse of discretion 'arises when a decision is made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis.'" Pitney Bowes Bank, Inc. v. ABC Caging Fulfillment, 440 N.J. Super. 378, 382 (App. Div. 2015) (quoting Flagg v. Essex Cnty. Prosecutor, 171 N.J. 561, 571 (2002)).

Williams reprises the identical arguments that we already considered and rejected in our June 2, 2023 opinion: (1) the Act and regulations promulgated thereunder are not applicable to the subject property; (2) the subject property is exempt from appointment of a receivership under the MHPRA; and (3) his equal protection rights were violated.

The City counters Williams has received "[thirteen] bites of the judicial apple" and has sought the same relief, to no avail, in the trial, appellate, and federal courts. The City also points out this is an appeal from an interlocutory order, and therefore, this court lacks jurisdiction to adjudicate the appeal because Williams failed to seek leave to appeal under Rule 2:2-4. However,

11

considering the circumstances of this matter, we review the motion court's order as final and appealable as of right, as it resolved all issues as to all parties. See Rubin v. Tress, 464 N.J. Super. 49, 56 n.3 (App. Div. 2020) (an order "dispos[ing] of all issues as to all parties" is appealable as of right, "depending on the circumstances"); R. 2.2-3(a). Although the order did not explicitly state it is final, under Rule 4:42-2, it effectively dismissed all of Williams's claims.

Here, the record establishes Williams has failed to provide any new evidence or arguments not previously considered and rejected. Williams has failed to sustain his burden of proof under Rule 4:50-1(f), or that reconsideration was warranted. We add the following comments.

The MHPRA governs a court's ability to appoint a receiver to manage a property. N.J.S.A. 2A:42-117(a)-(b) states:

> A summary action . . . to appoint a receiver to take charge and manage a building may be brought by a party in interest or qualified entity in the [s]uperior [c]ourt in the county in which the building is situated. Any receiver so appointed shall be under the direction and control of the court and shall have full power over the property and may, upon appointment . . . commence and maintain proceedings for the conservation, protection or disposal of the building, or any part thereof, as the court may deem proper.
>
> A building shall be eligible for receivership if it meets one of the following criteria:

[(a)] The building is in violation of any State or municipal code to such an extent as to endanger the health and safety of the tenants as of the date of the filing of the complaint with the court, and the violation or violations have persisted, unabated, for at least [ninety] days preceding the date of the filing of the complaint with the court; or

[(b)] The building is the site of a clear and convincing pattern of recurrent code violations, which may be shown by proofs that the building has been cited for such violations at least four separate times within the [twelve] months preceding the date of the filing of the complaint with the court, or six separate times in the two years prior to the date of the filing of the complaint with the court and the owner has failed to take action . . . .

[N.J.S.A. 2A:42-117 (emphasis added).]

The purpose of the MHPRA is to protect citizens "adversely affected by blighted residential property" and "who live in buildings that fail to meet adequate standards for health, safety[,] and welfare or fail to meet reasonable housing code standards, and those who live in proximity to such buildings." N.J.S.A. 2A:42-115(a).

We already addressed the validity of the motion court's appointment of a receiver for the subject property in our 2023 opinion when we held:

The record amply supports the chancery court's appointment of a receiver for the [subject] [p]roperty. [The] City had identified several violations at the [subject] [p]roperty that endangered the health and safety of the tenants, including a water leak and fire

13

hazards. The court gave defendant ninety days to abate the violations identified by Union City, and he failed to do so.

[Williams, slip op. at 15.]

However, we now focus on the specific subpart of the MHPRA that supports the motion court's conclusion in its March 1, 2019 order to officially appoint a receiver to the subject property. We conclude the motion court's ability to appoint a receiver is supported under N.J.S.A. 2A:42-117(a):

> [(a)] The building is in violation of any State or municipal code to such an extent as to endanger the health and safety of the tenants as of the date of the filing of the complaint with the court, and the violation or violations have persisted, unabated, for at least [ninety] days preceding the date of the filing of the complaint with the court; or

> [N.J.S.A. 2A:42-117(a).]

We reject Williams's contention that the definition of a "building" under the Act absolves him from the appointment of a receiver despite satisfying N.J.S.A. 2A:42-117(a). The exception states:

> any building or structure and the land appurtenant thereto in which at least half of the net square footage of the building is used for residential purposes; and shall not include any one to four unit residential building in which the owner occupies one of the units as his or her principal residence[.]

> [N.J.S.A. 2A:42-116 (emphasis added).]

14

Williams further maintains his building is a three-family residential unit building that is owner-occupied as his principal residence. According to Williams, his building was owner occupied for two years before the City first filed for receivership in 2019, evidenced by his New Jersey driver's license, as required by New Jersey law. See N.J.S.A. 39:3-9b ("Each application for a driver's license, or a renewal . . . shall contain the street address of the place of residence of the licensee at the time of application or renewal"). Williams avers he also signed affidavits attesting to his living at the subject property as his primary residence.

We reject Williams's argument. In contrast to his contention, the undisputed record shows when Williams was asked about his receipt of a notice of violation at the City's municipal board hearing in 2017, he testified he did not reside at the subject property. Williams stated there was "no way" for him to sign for the notice because "it's a mailing box" he has at the subject property. Later, Williams contradicted his own testimony when he responded to a question as to where he was residing. Williams answered he lived "[o]n the third floor at the building." Once again, Williams contradicted himself when he testified he checks the subject property's mailbox "once a month" to "pick up the rent."

The record is clear that in 2019, in response to the City's filing of an OTSC and complaint, Williams failed to provide sufficient evidence to the court to

15

satisfy his burden that he actually resided at the subject property. Moreover, the record does not show Williams presented an affidavit of landlord proof of residency or a driver's license in his first answer, of which he now claims should be dispositive, to support his contention the subject property was his primary residence at the time. Therefore, the exception is inapplicable as Williams's arguments are unavailing.

As to the motion court's appointment of a receiver to the subject property, the record clearly shows that such was proper under N.J.S.A. 2A:42-117(a). The multitude of Williams's violations were to "such an extent as to endanger the health and safety of the tenants" as of the date the City filed its complaint with the court—January 2019, when the City requested appointment of a receiver for the first time by way of an OTSC due to violations of municipal ordinances, the Act, and the Code. N.J.S.A. 2A:42-117(a).

On August 11, 2015, Williams received notice that the subject property's first-floor unit was non-conforming with the City's ordinances and was requested to provide proof of a certificate of occupancy. The Act and applicable regulations under the Code likewise require a building to obtain a certificate of occupancy, with the purpose of protecting the "health, safety, and welfare" of its occupants or users. DKM Residential Props. Corp. v. Township of

Montgomery, 182 N.J. 296, 303 (2005); N.J.S.A. 52:27D-133; N.J.S.A. 52:27D-120(e).

Further, on December 18, 2017, the New Jersey Bureau of Housing Inspection recorded violations in the building related to heating, ventilation, air conditioning maintenance, duct work, stoves, and ovens. In March 2018, the City notified Williams that construction work pertaining to the building was improperly completed without the proper construction permits. Moreover, the subject property was issued numerous violations that did not just persist unabated "for at least ninety days" before the City filed its complaint, but rather, for three years and four months before the filing date. N.J.S.A. 2A:42-117(a).

Additionally, Williams's reliance on Lucas v. S.C. Coastal Council, 505 U.S. 1003 (1992), in support of his alleged violation of equal protection rights is misguided. Lucas does not stand for this proposition and does not even mention the appointment of a receiver. Instead, Lucas addresses a deprivation under the takings clause based on a state barring a landowner from erecting permanent habitable structures on their land. Id. at 1007. We note the other cases cited by Williams also do not explain or support his argument.[5]

---

[5] Shammas v. Shammas, 9 N.J. 321 (1952); Hous. Auth. of Morristown, 135 N.J. 274; Baumann v. Marinaro, 95 N.J. 380 (1984); Hodgson v. Applegate, 31 N.J. 29 (1959); Brown v. Bd. of Educ., 349 U.S. 294 (1955).

In sum, we find the motion court's appointment of a receiver on March 1, 2019, and enforcement of that order on June 7, 2024, did not constitute an abuse of discretion. Therefore, we do not find any support in the record that Williams was denied equal protection of the law under the United States or this State's Constitution.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

18